UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TOMAS ROMANO,

                       Plaintiff,                       **REPORT AND RECOMMENDATION**

   -against-                                 24-CV-00999
                                               (ARR)(SIL)
BAGEL & DELI CREATION NEW YORK LLC,
*and* NEIL PATEL,



                    Defendants.
------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

      Presently before the Court in this Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") unpaid wages action, on referral from the Honorable Allyne R. Ross for Report and Recommendation, is Plaintiff Tomas Romano's ("Plaintiff" or "Romano") motion for default judgment pursuant to Rule 55 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P.") against Defendants Bagel & Deli Creation New York LLC ("B&DC") and Neil Patel ("Patel") (collectively, "Defendants"). *See* Plaintiff's Motion for Default Judgment ("Plaintiff's Motion" or "Pl. Mot."), DE [10].

      By way of Complaint dated February 8, 2024, Plaintiff commenced this action alleging that Defendants, his former joint employers, failed to pay him both regular and overtime wages and failed to provide him with legally required wage notices or statements. *See* Complaint ("Compl."), DE [1]. Romano's summonses to Patel and B&DC were returned executed on February 12 and 13, 2024, respectively, and their answers were due March 4 and 5, 2024. *See* DEs [5] and [6]. After Defendants failed

to answer the Complaint, Plaintiff requested a certificate of default, *see* DE [7], which was entered on April 4, 2024.  *See* Certificate of Default, DE [8].  Defendants have not answered the Complaint to date.  Romano seeks a default judgment in the amount of $996,547.11, including, under the FLSA and NYLL, overtime compensation; and under the NYLL alone, regular unpaid wages, wage notice and wage statement statutory damages, liquidated damages, and pre-judgment interest, plus post-judgment interest in an amount to be determined.  *See* Pl. Mot.  For the reasons set forth herein, the Court respectfully recommends granting Plaintiff's Motion as to his overtime compensation and regular unpaid wages claims, and his requested liquidated damages and pre- and  post-judgment interest; denying it as to his NYLL wage notice and wage statement causes of action; and dismissing those latter two claims for lack of subject-matter jurisdiction.

## I.    BACKGROUND

### A. Facts

The facts are taken from the Complaint, and are assumed true for purposes of resolving this motion.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

From June 2021 to December 2023, Defendants employed Romano as a baker and food preparer.  *See* Compl., ¶¶ 10-11.  B&DC is a limited liability company organized under New York laws with its principal place of business at 669 Route 109, West Babylon, New York.  *See* Compl., ¶ 13.  According to Plaintiff, BD&C "is an enterprise engaged in commerce or engaged in the production of goods for commerce" that "had and continues to have employees[, including Romano,] who handle, sell, or

2

otherwise work on goods or materials that have been moved in or produced for interstate commerce," *id.*, ¶¶ 15, 58, 59, which had at all relevant times a gross annual volume of sales of at least $500,000. *Id.*, ¶ 16.

B&DC "maintained control, oversight, and direction over" Plaintiff during his employment, "including timekeeping, [and] payroll." *Id.*, ¶ 18. At all relevant times, Patel was an "owner, officer, director, shareholder and/or managing agent" of B&DC, "ran" its "daily operations," "controlled significant business functions" there, and managed and supervised Romano. *Id.*, ¶¶ 12, 13, 20-24. Patel "determined the wages and compensation of [B&DC] employees, established the schedules of its employees, maintained its employee records, and had the authority to hire and fire its employees, including . . . Plaintiff." *Id.*, ¶ 25.

From June to December 2021, Romano worked six days a week, Tuesday through Sunday, from midnight to 1:00 p.m, totaling 78 hours per week. *Id.*, ¶¶ 41, 42, 44. He was paid $1,400 a week during this time. Pl. Mot., Ex. F, Declaration of Tomas Romano in Support of Plaintiff's Motion ("Romano Declaration" or "Romano Decl."), DE [10-9], ¶ 12. From December 2021 to December 2023, Plaintiff worked seven days a week, from 11:00 p.m. to 12:00 p.m. the next day, totaling 91 hours per week. *Id.*, ¶¶ 45, 46, 48. Defendants compensated him $1,800 per week during this time. Romano Decl., ¶ 15. During his employment, Romano took no uninterrupted meal breaks of more than fifteen minutes. *Id.*, ¶¶ 43, 47.

According to Plaintiff, sometime between December 2021 and December 2023, Defendants did not pay Romano at all for twenty weeks of work, although the

3

Complaint does not specify which weeks. *Id.*, ¶ 93. Moreover, Defendants did not pay Plaintiff an overtime premium for hours he worked exceeding 40 per week. *Id.*, ¶ 50. According to Romando, Defendants' failure to pay overtime and regular wages was "willful[ ]." *Id.*, ¶¶ 54, 66, 79. Finally, Defendants never provided Romano the wage notices and wage statements required by New York Labor Law ("NYLL") §§ 191(1), (3). *Id.*, ¶¶ 52-53.

### B. <u>Procedural History</u>

Based on the above, Plaintiff commenced this action against Defendants, bringing causes of action under: (i) the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*; and (ii) NYLL, Articles 6 and 19. *See* Compl. Romano's summonses to Patel and B&DC were returned executed on February 12 and 13, 2024, respectively, and their answers were due March 4 and 5, 2024. *See* DEs [5] and [6]. After Defendants failed to answer, Plaintiff requested a certificate of default, *see* DE [7], which was entered on April 4, 2024. *See* Certificate of Default, DE [8]. Defendants have not answered the Complaint to date.

## II. LEGAL STANDARD

### A. <u>Article III Standing</u>

Under Article III of the United States Constitution, a federal court's jurisdiction is limited to "cases" and "controversies." U.S. Const. Art. III, § 2. "For there to be a case or controversy under Article III, the plaintiff must have a 'personal stake' in the case—in other words, standing." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423, 141 S. Ct. 2190, 2203 (2021) (citation omitted). If a plaintiff in federal court lacks Article III standing, that court lacks federal subject matter jurisdiction. *See*

*Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care*, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005).  To maintain Article III standing, a plaintiff must allege facts sufficient to establish:  "(i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion LLC*, 594 U.S. at 423, 141 S. Ct. at 2203; *see Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136-37 (1992).

"[A] plaintiff has standing to bring a claim for monetary damages following a statutory violation only when he can show a current or past harm *beyond the statutory violation itself.*"  *Guthrie v. Rainbow Fencing Inc.*, 113 F.4th 300, 306 (2d Cir. 2024) (emphasis in original) (citing *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 443 (2d Cir. 2022); *TransUnion*, 594 U.S. at 424-30, 141 S.Ct. at 2203-08)).  As a result, a plaintiff bringing claims for wage notice and wage statement violations under the NYLL "must allege 'actual injuries suffered as a result of'" those violations.  *Guthrie*, 113 F.4th at 305 (2d Cir. 2024) (citing *Guthrie*, No. 21-CV-5929, 2023 WL 2206568, at *6 (E.D.N.Y. Feb. 24, 2023)); *see Deng v. Frequency Elecs., Inc.*, 640 F. Supp. 3d 255, 267 (E.D.N.Y. 2022) (dismissing plaintiff's NYLL wage notice and wage statement claims for lack of subject-matter jurisdiction where plaintiff alleged no "actual and concrete injury" as a result).

B.  **Motions for Default Judgment**

Motions for default judgment are governed by Fed. R. Civ. P. 55, which provides for a two-step process.  *See* Fed. R. Civ. P. 55; *Priestley v. Headminder, Inc.*,

647 F.3d 497, 504-05 (2d Cir. 2011).  Initially, the moving party must obtain a certificate of default from the Clerk of the Court.  *See* Fed. R. Civ. P. 55(a).  Once the certificate of default is issued, the moving party may apply for entry of a default judgment.  *See id.* at 55(b).  Where a default occurs, the well-pleaded factual allegations set forth in a complaint relating to liability are deemed true.  *Vermont Teddy Bear Co.*, 373 F.3d at 246; *see* Fed. R. Civ. P. 8(b)(6) ("An allegation – other than one relating to the amount of damages – is admitted if a responsive pleading is required and the allegation is not denied.").  However, the entry of a default judgment is "entrusted to the sound judicial discretion of the court," and a party is not entitled to a default judgment as a matter of right.  *Allstate Ins. Co. v. Howell*, No. 09-CV-4660, 2013 WL 5447152, at *1 (E.D.N.Y. Sept. 30, 2013) (citation omitted).

A plaintiff seeking a default judgment must demonstrate that its "uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action."  *Gunawan v. Sake Sushi Rest.*, 897 F. Supp. 2d 76, 83 (E.D.N.Y. 2012).  In determining whether to grant a motion for default judgment, the court has the "responsibility to ensure that the factual allegations, accepted as true, provide a proper basis for liability and relief."  *Ferrera v. Tire Shop Ctr.*, No. 14-CV-4657, 2015 WL 3562624, at *2 (E.D.N.Y. Apr. 6, 2015), *report and recommendation adopted*, 2015 WL 3604078 (E.D.N.Y. Jun. 5, 2015) (internal quotation marks and citation omitted).

Accordingly, prior to entering a default judgment, the court must determine whether the plaintiff's allegations establish the defendant's liability "as a matter of

law." *Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015). Once liability has been established, "[t]he court must also determine the amount of damages, actual or statutory, that may be assessed." *Lyons P'ship, L.P. v. D & L Amusement & Entm't, Inc.*, 702 F. Supp. 2d 104, 111 (E.D.N.Y. 2010).

## III.    DISCUSSION

Plaintiff seeks a default judgment in the amount of $996,547.11 against Defendants, jointly and severally, on Romano's FLSA and NYLL claims. *See* Pl. Mot., Ex. G, Calculation of Damages, DE [10-10]; Romano Decl., ¶ 33.   Plaintiff calculates this amount by adding $416,775.00 in unpaid overtime wages, $36,000.00 in unpaid regular wages, $5,000.00 for wage notice violations, $5,000.00 for wage statement violations, $452,775.00 in liquidated damages, and $80,997.11 in pre-judgment interest. *See* Pl. Mot. at 21. Finally, Romano seeks post-judgment interest pursuant to 28 U.S.C. § 1961. *See id.* at 18-19.

The record reflects that Defendants were served with the Complaint. *See* DEs [5]-[6].  Moreover, the time for Defendants to answer the Complaint has expired, *see id.*, and the Clerk of Court has issued certificates of default against them. *See* DEs [7]-[8].   As a result, the Court must determine whether the allegations of the Complaint establish Defendants' liability as a matter of law. For the reasons set forth below, the Court concludes that Romano has established Defendants' liability and his entitlement to the damages he seeks as to each claim except his NYLL wage notice and wage statement causes of action, for which Romano lacks Article III standing.

Accordingly, it is respectfully recommended that Plaintiff's Motion be granted as to his unpaid overtime and regular wages claims, that his wage notice and statement causes of action be dismissed, and that Romano additionally be awarded liquidated damages and pre- and post-judgment interest.

### A. Liability Under the FLSA

Initially, Plaintiff argues that Defendants are liable under the FLSA for unpaid overtime compensation. *See* Pl. Mot. at 4, 6-11. Romano must establish that Defendants are employers engaged in interstate commerce to be afforded statutory protection. *See* 29 U.S.C. § 207; *D'Arpa v. Runway Towing Corp.*, No. 12-cv-1120, 2013 WL 3010810, at *13 (E.D.N.Y. June 18, 2013).

#### i. Employer-Employee Relationship

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). To determine whether someone is an "employer" under the statute, the Second Circuit uses the economic realities test, which focuses on "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Irizarry v. Catsimatidis*, 722 F.3d 99, 104-105 (2d Cir. 2013) (internal quotation and citation omitted). The analysis depends on whether a defendant had "operational control" over employees. *Id.* at 110.

Here, the Court concludes that Defendants are employers under the FLSA. Looking first to B&DC, Romano alleges that he worked for the company, and that B&DC "maintained control, oversight, and direction over Plaintiff, including

timekeeping, payroll and other employment practices." Compl., ¶ 18.  Because B&DC "had control over the terms and conditions of [P]laintiff's employment," it is an employer for FLSA purposes. *Valdez v. H & S Rest. Operations, Inc.*, No. 14-CV-4701, 2016 WL 3079028, at *3 (E.D.N.Y. Mar. 29, 2016), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016).  As to Patel, Romano alleges that he was an "owner, officer, director, shareholder and/or managing agent" of B&DC, "ran" its "daily operations," "controlled significant business functions" there, and managed and supervised Plaintiff. Compl., ¶¶ 12, 13, 20-24.  Moreover, according to Romano, Patel "determined the wages and compensation of [B&DC] employees, established the schedules of its employees, maintained its employee records, and had the authority to hire and fire its employees, including . . . Plaintiff." *Id.*, ¶ 25.  Under the economic realities test, Romano has sufficiently alleged that Patel was also his employer.   *See Irizarry*, 722 F.3d at 104-105.   Further, the Complaint alleges sufficient collective action undertaken by Defendants as to impose joint and several liability under the FLSA.  *See Shim v. Millennium Group, LLC*, No. 08-CV-4022, 2010 WL 409949, at *1 (E.D.N.Y. Jan. 27, 2010) (finding on default judgment that both individual defendants and corporation were liable under the FLSA where complaint contained allegations of actions taken collectively by "defendants").

> ii.    *Interstate Commerce*

"For employees to be covered by the FLSA, they must show either that their employer was an enterprise engaged in interstate commerce," also referred to as "enterprise coverage," "or that their work . . . regularly involved them in interstate

commerce," also known as "individual coverage." *Marine v. Vieja Quisqueya Rest. Corp.*, No. 20-CV-4671, 2022 WL 17820084, at *3 (E.D.N.Y. Sept. 8, 2022), *adopted by* Elec. Order dated Sept. 23, 2022, No. 20-CV-4671 (E.D.N.Y. Sept. 23, 2022); 29 U.S.C. §§ 206, 207; *Jacobs v. New York Foundling Hosp.*, 483 F. Supp. 2d 251, 263 (E.D.N.Y. 2007), *aff'd*, 577 F.3d 93 (2d Cir. 2009). To proceed under an enterprise coverage theory, a plaintiff must further allege that "a business has annual gross sales, during the applicable FLSA coverage period, of $500,000 or more." *Gaitian v. D'Amico Indus. LLC*, No. 22-CV-6466, 2024 WL 4265839, at *6 (E.D.N.Y. Sept. 23, 2024) (citing, *inter alia*, 29 U.S.C. § 203(s)(1)(A)(ii)).

The Complaint alleges both types of coverage. As to enterprise coverage, Romano states that B&DC "is an enterprise engaged in commerce or engaged in the production of goods for commerce," with a gross annual volume of sales of at least $500,000 in all relevant years. *See* Compl., ¶¶ 58-60. Turning to individual coverage, Romano alleges that he "handle[d] goods or materials that have moved in interstate commerce." *Id.*, ¶ 59. Although Plaintiff does not provide specific instances of interstate commerce, the Court can infer a nexus, because Defendants are engaged in the food industry and Romano handled food products, which presumably were transferred between states. *See Cardoza v. Mango King Farmers Mkt. Corp.*, No. 14-CV-3314, 2015 WL 5561033, at *4 (E.D.N.Y. Sept. 1, 2015), *report and recommendation adopted by*, 2015 WL 5561180 (E.D.N.Y. Sept. 21, 2015) (inferring interstate commerce where defendants were engaged in the food supply industry); *Huerta v. Victoria Bakery*, 10-CV-754, 2012 WL 1107655, at *2 (E.D.N.Y. Mar. 30,

10

2012) (assuming interstate commerce because "[i]t is inconceivable that some of the bread-making materials used by plaintiffs did not originate out of state or that the bakery did not sell its products outside the State of New York."). Accordingly, the Court recommends that Defendants be deemed employers under the FLSA, such that they can be held jointly and severally liable for any violation of the FLSA's overtime and minimum wage requirements.

### iii.    *Overtime Compensation Claim*

Having determined that the parties are covered by the FLSA, the Court turns to the substance of Romano's FLSA claim. In relevant part, the FLSA provides that

> [N]o employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(a)(1). "Under both the FLSA and NYLL, all of the time worked during a continuous workday is compensable, save for bona fide meal breaks." *Najera v. Lake Ave Pizza LLC,* No. 21-CV-6753, 2023 WL 5752588, at *6 (S.D.N.Y. Aug. 3, 2023), *report and recommendation adopted sub nom. Hernandez v. Lake Ave Pizza LLC*, 2023 WL 5748117 (S.D.N.Y. Sept. 6, 2023) (citation omitted). A meal break generally "bona fide" where lasts at least 30 minutes and affords the employee an opportunity to eat without performing any duties. *See* 29 C.F.R. § 785.19.

Here, Plaintiff alleges that from June to December 2021, he worked 78 hours per week, *id.*, ¶¶ 41, 42, 44, and from December 2021 to December 2023, he worked

11

91 hours per week. *Id.*, ¶¶ 45, 46, 48. During his employment, Plaintiff took no uninterrupted meal breaks of more than fifteen minutes. *Id.*, ¶¶ 43, 47. Accordingly, Romano has established overtime violations under the FLSA.

## B. Liability Under the NYLL

Next, Romano argues that Defendants are liable under the NYLL for: (i) overtime violations; (ii) failure to pay regular wages; and (iii) failure to provide wage notices or statements. The Court considers each in turn.

Initially, "[t]he New York Labor Law 'is the state analogue to the . . . FLSA,'" with the exception that there is no interstate commerce or minimum sales volume requirement. *See D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013) (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 292 (E.D.N.Y. 2011) ("Although the [NYLL] 'does not require a plaintiff to show either a nexus with interstate commerce or that the employer has any minimum amount of sales,' it otherwise echoes the FLSA in compensation provisions regarding overtime and minimum wage requirements.")). As such, "the standards by which a court determines whether an entity is an employer under the FLSA also govern that determination under the New York Labor Law." *Wolman v. Catholic Health Sys. Of Long Island, Inc.*, No. 10-CV-1326, 2013 WL 1335748, at *2 (E.D.N.Y. Mar. 29, 2013) (internal quotations and citations omitted). Indeed, "[t]o determine whether an individual is an 'employer' under both statutes, courts in this circuit consider the 'economic reality' of the employer-employee relationship." *Serrano v. I. Hardware Distributors, Inc.*, No. 14-CV-2488, 2016 WL 1441469, at *2 (S.D.N.Y. Apr. 7, 2016)

(internal citation omitted).   Accordingly, with respect to an employer-employee relationship under the FLSA, Romano's allegations are sufficient to establish the necessary employment relationship and impose liability on Defendants under the NYLL.   *See Santillan*, 822 F. Supp. at 293 (noting that the NYLL provisions are "substantially similar to the federal scheme" such that its analysis of federal law would apply equally to claims brought under the FLSA and New York law) (internal quotations and citations omitted).

> ### i.   *Overtime Compensation Claim*

Consistent with the FLSA, overtime compensation under the NYLL is 1.5 times the regular rate of pay for each hour worked in excess of 40 hours per week. *See* N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4; *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192, 200 (2d Cir. 2013) (noting that the NYLL adopts the FLSA's definition of overtime into the NYLL).   "An employee's appropriate overtime rate is calculated by multiplying an employee's regular hourly rate . . . by one and one-half." *Baizan Guerrero v. 79th Street Gourmet & Deli, Inc.*, No. 18-CV-04761, 2019 WL 4889591, at *8 (E.D.N.Y. Sept. 10, 2019), *report and recommendation adopted*, 2019 WL 4887914 (E.D.N.Y. Oct. 3, 2019) (internal quotations and citation omitted).

As employers subject to the NYLL, Defendants are consequently liable for Romano's properly pled violation of the State's overtime requirements.   As set forth above, Plaintiff alleges that from June to December 2021, he worked 78 hours per week. *id.*, ¶¶ 41, 42, 44, and from December 2021 to December 2023, he worked 91

hours per week, all without overtime compensation. *Id.*, ¶¶ 45, 46, 48. Accordingly, a default judgment against Defendants is appropriate not only under the FLSA, but also under the NYLL.

### ii.   Failure to Pay Regular Wages

Romano also alleges that he was not paid at all for twenty weeks of work performed for Defendants. *See* Compl., ¶ 93. He brings this claim under the NYLL only. *See id.*, ¶¶ 90-97. "The NYLL provides that a manual worker is required to be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned. . . . A manual worker is defined as 'a mechanic, workingman or laborer.'" *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 52 (S.D.N.Y. 2023) (citing NYLL §§ 190(4), 191(1)(a)(i)). "Section 663 of the [NYLL] . . . expressly authorizes an employee to sue his or her employer to recover unpaid wages otherwise due to him or her under the statute." *Santillan*, 822 F. Supp. 2d at 293 (citing NYLL § 663(1)). Plaintiff has thus established Defendants' liability for unpaid regular wages under New York law.

### iii.   Failure to Provide Wage Notices or Statements

Finally, Romano contends that Defendants are liable under NYLL Sections 195(1)(a) and 195(3) for failure to furnish him with wage notices and wage statements. *See* Pl. Mot. at 13-14. The NYLL requires employers to "provide his or her employees, in writing . . . at the time of hiring, a notice" containing a variety of information, including the rate or rates of pay, the regular pay day, and the contact information of the employer. NYLL § 195(1)(a). It also mandates that an employer

14

provide employees a wage statement each time that employee is paid, which includes a variety of information. *Id.*, § 195(3). The statute further provides a civil remedy for an employer's failure to provide either document. *See* NYLL §§ 198(1-b), (1-d). As explained above, however, a plaintiff bringing claims for wage notice and wage statement violations under the NYLL "must allege 'actual injuries suffered as a result of'" those violations. *Guthrie*, 113 F.4th at 305.

Plaintiff alleges that Defendants provided him with neither wage notices nor wage statements, but does not allege "actual injuries" as a result of Defendants' failure. *Id.*; *see* Compl., ¶¶ 82-89. Accordingly, Romano lacks standing to bring these claims in federal court, and the Court consequently lacks subject-matter jurisdiction to hear them. *See Guthrie*, 113 F.4th at 306; *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005). As a result, the Court recommends dismissal of these claims.

### C. <u>Damages</u>

Once liability is established, the court must ascertain damages with "reasonable certainty." *Hosking v. New World Mortg., Inc.*, 570 Fed. App'x 28, 31 (2d Cir. 2014). To prove damages, a plaintiff need only show that the "compensation sought relate[s] to the damages that naturally flow from the injuries pleaded." *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992). An evidentiary hearing is not required if there is a basis, demonstrated through detailed affidavits, for example, for the damages awarded. *See Transatlantic*

15

*Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc.*, 109 F.3d 105, 111 (2d Cir. 1997).

Here, Romano seeks to recover $996,547.11 from Defendants, jointly and severally, as well as post-judgment interest. *See* Romano Decl. ¶ 33; Pl. Mot., Ex. G, Calculation of Damages, DE [10-10]. Plaintiff calculates this amount by adding $416,775.00 in unpaid overtime wages, $36,000.00 in unpaid regular wages, $5,000.00 in wage notice violations, $5,000.00 in wage statement violations, $452,775.00 in liquidated damages, and $80,997.11 in pre-judgment interest. *See* Pl. Mot. at 21. The Court considers each category in turn.

### i. *Unpaid Overtime Wages*

The FLSA and NYLL require employers to provide an employee with an overtime premium for all hours worked exceeding 40 hours per week at one and a half times his regular rate of pay. *See* 29 U.S.C. § 207(a)(1); 29 C.F.R. § 778.112; NYLL §§ 650 *et seq.*; 12 NYCRR § 142-2.2. If the employer fails to produce such evidence in response to an overtime claim, the court may then award damages to the employee, even though the result is only approximate. *Jemine v. Dennis*, 901 F. Supp. 2d 365, 376 (2d Cir. 2012). Likewise, where the employer has defaulted, the employee's recollection and estimates of hours worked are presumed to be correct, *Santillan*, 822 F. Supp. at 294; *Gunawan*, 897 F. Supp. 2d at 83, and "the employer cannot be heard to complain that the damages lack the exactness and precision of measurement that would be possible had he kept records." *Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 398 (E.D.N.Y. 2007) (internal quotation omitted).

Claims for overtime violations under FLSA are ordinarily subject to a two-year statute of limitations, but the limitations period is extended to three years for willful violations.  29 U.S.C. § 255(a).  Here, Romano sufficiently alleges a willful violation such that the three-year limitations period under the FLSA applies, *see* Compl., ¶¶ 54, 66, 79, and as the Complaint was filed on February 8, 2024, Plaintiff is entitled to relief for violations that occurred on or after February 8, 2021, encompassing the entire period of his employment.  *See* Compl., ¶¶ 10-11.  The statute of limitations under the NYLL is longer—six years—which necessarily also spans the length of Romano's claims.  *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 369 n.2 (E.D.N.Y. 2022) (citing NYLL §§ 198(3), 663(3)).

A plaintiff is only entitled to one recovery for overtime violations alleged under the FLSA and NYLL, however.  *See Ni v. Bat-Yam Food Servs. Inc.*, No. 13-CV-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016).  Because Plaintiff seeks liquidated damages under the NYLL and not under the FLSA, *see* Pl. Mot. at 17, the Court analyzes Romano's damages under the former.

 "To calculate Plaintiff's overtime compensation, the number of hours each Plaintiff worked over forty per week is multiplied by 150 percent of the higher of their regular rate of pay, or the applicable minimum wage." *Jimenez v. Green Olive Inc.*, No. 23-CV-8805, 2024 WL 3763467, at *19 (E.D.N.Y. Aug. 13, 2024) (citation omitted). "Both the NYLL and FLSA carry a rebuttable presumption that a weekly salary covers only the first [40] hours worked unless the parties have an alternate agreement." *Ramirez v. Urion Constr. LLC*, 674 F. Supp. 3d 42, 50 (S.D.N.Y. 2023)

(citations omitted). Accordingly, a plaintiff's "regular rate of pay should be calculated by dividing" his "fixed weekly salary . . . by 40 hours." *Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *32 (S.D.N.Y. June 9, 2016) (citing *Giles v. City of New York*, 41 F. Supp. 2d 308, 316-17 (S.D.N.Y. 1999); 12 N.Y.C.R.R. § 146-3.5).

Here, Plaintiff was paid $1,400 weekly for 26 weeks of work, from June 2021 to December 2021, during which he worked 78 hours per week. *See* Romano Decl., ¶¶ 10-12; Pl. Mot., Ex. G, Calculation of Damages, DE [10-10]. Thus, his regular rate of pay over this time period was $1,400/40 hours, or $35 per hour. His overtime rate, then, is 150 percent of $35, or $52.50 per hour. Each week, he worked 38 hours of overtime, resulting in weekly overtime pay of 38 multiplied by $52.50, or $1,995. Accordingly, over this 26 week period, he was entitled to $51,870 in overtime pay.

Romano then received a salary of $1,800 weekly for 86 weeks of work, during which he worked 91 hours a week. *See* Romano Decl., ¶¶ 13-18; Pl. Mot., Ex. G, Calculation of Damages, DE [10-10]. His regular rate of pay was $45 per hour, yielding an overtime rate of $67.50. Each week, he worked 51 hours of overtime, earning overtime pay of $3,442.50 per week, for a total of $296,055.

Finally, Plaintiff received no salary at all for 20 weeks of work, during which he also worked 91 hours and was owed $1,800 each week. *See* Romano Decl., ¶ 18; Pl. Mot., Ex. G, Calculation of Damages, DE [10-10]. As explained above, his weekly overtime pay during these months was $3,442.50, which multiplied by 20 yields $68,850 in overtime compensation. Accordingly, the Court recommends that Romano

be awarded $416,775 in total overtime compensation, calculated as the sum of the three preceding totals.

### ii.    Unpaid Regular Wages

As explained above, NYLL § 663(1) entitles Romano to recover wages for non-overtime hours (or "straight time") worked during the 20 weeks in which he was not paid at all.  *See Santillan*, 822 F. Supp. 2d at 293 (E.D.N.Y. 2011) (citing NYLL § 663(1)); Romano Decl., ¶ 18.  "Unlike the FLSA, the NYLL does allow for recovery of unpaid wages at 'the agreed-upon rate, even if it exceeds the minimum wage.'" *Shetty v. SG Blocks, Inc*., No. 20-CV-00550, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020) (citing *Kernes v. Global Structures, LLC*, No. 15-CV-659, 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016)); NYLL § 191(1)(a)(i)).  Here, Plaintiff asserts that the agreed-upon rate during the 20 weeks he worked without pay was $1,800 weekly.  *See* Romano Decl., ¶¶ 17-18; Pl. Mot., Ex. G, Calculation of Damages, DE [10-10].  Accordingly, the Court recommends that Romano be awarded $36,000 in straight time pay, calculated as $1,800 multiplied by 20 weeks.

### iii.    Wage Notice and Wage Statement Statutory Damages

Because dismissal of these claims is appropriate for lack of subject-matter jurisdiction, as explained above, the Court recommends declining to award the resulting statutory damages Plaintiff seeks.

### iv.    Liquidated Damages

Romano moves for liquidated damages under the NYLL only.  *See* Pl. Mot. at 17.  The NYLL allows for liquidated damages awards equaling 100 percent of the wages due.  *See* NYLL § 663(1).  A court may decline to award liquidated damages,

19

however, if "the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law." NYLL § 663(1); *see also Santana v. Latino Express Restaurants, Inc.*, 198 F. Supp. 3d 285, 293 (S.D.N.Y. 2016) ("[A] November 24, 2009 amendment changed the NYLL liquidated damages provision to resemble that of the FLSA, which requires only an absence of good faith on the part of the employer, shifting the burden to the employer to prove that he acted in good faith.").

Here, Defendants defaulted, failing to make a showing of good faith and rendering liquidated damages appropriate. *See, e.g.*, *Lu Nan Fan v. Jenny & Richard's Inc.*, 2019 WL 1549033, at *11 (E.D.N.Y. Feb. 22, 2019), *report and recommendation adopted*, 2019 WL 1547256 (E.D.N.Y. Apr. 9, 2019). Therefore, Plaintiff is entitled to 100 percent of his damages for overtime wages ($416,775) and unpaid straight time wages ($36,000) under the NYLL. Accordingly, the Court respectfully recommends that Plaintiff be awarded $452,775 in liquidated damages.

### v.    *Pre-Judgment and Post-Judgment Interest*

Romano also seeks prejudgment interest under the NYLL. *See* Pl. Mot. at 18. "[T]he NYLL permits the award of . . . pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 38 (E.D.N.Y. 2015). Under the New York Civil Practice Law and Rules, "[i]nterest shall be at the rate of nine per centum per annum." N.Y. C.P.L.R. § 5004. Where, as here, unpaid wages are "incurred at various times, interest shall be computed . . . from a single reasonable intermediate date." N.Y. C.P.L.R. § 5001(b); *Coulibaly v. Millennium Super Car Wash, Inc.*, 12-CV-04760, 2013 WL 6021668, at *15 (E.D.N.Y. Nov. 13, 2013).

Courts have discretion in choosing a reasonable date from which to calculate pre-judgment interest. *See Fermin*, 93 F. Supp. 3d at 49 ("Courts applying N.Y. CPLR § 5001 have wide discretion in determining a reasonable date from which to award pre-judgment interest . . . .") (quotation omitted). A common date is "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212, 2024 WL 4131905, at *17 (E.D.N.Y. Sept. 10, 2024) (citing *Sanchez v. Ms. Wine Shop Inc.*, 643 F. Supp. 3d 355, 380 (E.D.N.Y. 2022)). Here, the relevant period of employment for Plaintiff's claims is June 1, 2021 to December 9, 2023. *See* Romano Decl., ¶ 6. The midpoint of those dates is September 4, 2022. Applying a nine percent per annum rate, the Court respectfully recommends that Plaintiff be awarded $88,083.96[1] in prejudgment interest, plus additional prejudgment interest up to the date judgment is entered.

With respect to Plaintiff's request for post-judgment interest, although the Court has exercised supplemental jurisdiction over Plaintiff's state-law claims, any judgment awarded would, nevertheless, constitute a federal judgment. *Cappiello v. ICD Publications, Inc.*, 720 F.3d 109, 112 (2d Cir. 2013) (affirming district court's refusal to apply New York post-judgment 9% interest rate). Therefore, that judgment would be governed by the plain language of 28 U.S.C. § 1961, which applies to "any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961. Accordingly, the Court recommends awarding post-judgment interest at the

---

[1] This amount was calculated by multiplying the total amount of unpaid wages for Romano ($452,775) by 9%, then dividing by 365, for a daily rate of $111.64. The daily rate is then multiplied by the number of days between September 4, 2022 and November 1, 2024 (789 days).

statutorily prescribed federal rate. *See Cappiello*, 720 F.2d at 112 (citing 28 U.S.C §

1961(a)-(b)).

## IV.    CONCLUSION

For the reasons set forth above, the Court respectfully recommends:  (i) that

Plaintiff's Motion be granted in part and denied in part, and that Romano be awarded

damages in the amount of $993,633.96, including $416,775 in overtime compensation,

$36,000 in unpaid straight time wages, $452,775 in liquidated damages, and

$88,083.96 in pre-judgment interest, plus additional pre-judgment interest through

the date of judgment;  (ii) that Plaintiff be awarded post-judgment interest at the

statutorily prescribed federal rate; and (iii) that Plaintiff's NYLL wage notice and

wage statement claims be dismissed for lack of subject-matter jurisdiction.

## V.    OBJECTIONS

A copy of this Report and Recommendation is being served on Plaintiff by

electronic filing on the date below.  Plaintiff shall serve a copy of this Report and

Recommendation within three days on Defendants at their last known address and

file proof of service on the docket.  Any objections to this Report and Recommendation

must be filed with the Clerk of the Court within fourteen days.  *See* 28 U.S.C.

§636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d).  Failure to file objections

within this period waives the right to appeal the District Court's Order.  *See Ferrer*

*v. Woliver*, No. 05-CV-3696, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly*

*v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60

(2d Cir. 1996).

Dated:      Central Islip, New York
              November 1, 2024

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge