UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| TOMAS ROMANO,  *Plaintiff*,  — against —  BAGEL & DELI CREATION NEW YORK LLC, *and* NEIL PATEL,  *Defendants*. | 24-CV-999 (ARR) (SIL)  NOT FOR ELECTRONIC OR PRINT PUBLICATION  **OPINION & ORDER** |

ROSS, United States District Judge:

This Court has received the Report and Recommendation on the instant case dated August 17, 2024, from the Honorable Steven I. Locke, United States Magistrate Judge. *See* R. & R., ECF No. 11. No objections have been filed. Where no timely objections have been filed, "the district court need only satisfy itself that there is no clear error on the face of the record." *Finley v. Trans Union*, No. 17-CV-0371, 2017 WL 4838764, at *1 (E.D.N.Y. Oct. 24, 2017) (internal quotation marks omitted). Nonetheless, a district court remains free to conduct a *de novo* review. *See John Hancock Life Ins. Co. v. Neuman*, No. 15-CV-1358, 2015 WL 7459920, at *1 (E.D.N.Y. Nov. 24, 2015); *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) ("[T]he ultimate adjudicatory determination [is] reserved to the district court judge."). Having reviewed the record, I find no error, clear or otherwise, in the Report and Recommendation as to defendants' liability under the Fair Labor Standards Act (FLSA) or the New York Labor Law (NYLL). However, for the reasons set forth below, applying *de novo* review, I decline to adopt the Report and Recommendation's findings as to damages.

**FACTUAL BACKGROUND**

According to plaintiff's sworn declaration, between June 2021 and December 2021, he

1

"worked 78 hours per week" and was paid "a set weekly salary of $1,400.00" that did not vary according to the hours worked. Romano Decl, ¶¶ 10–12, ECF No. 10-9. Between December 2021 and December 2023, Mr. Romano "worked 91 hours per week" and was paid "a set weekly salary of $1,800." *Id*. ¶¶ 13–15. During both of those periods, defendants failed to pay Mr. Romano overtime compensation for his hours worked in excess of forty hours per week. *Id*. ¶ 19. In addition, for twenty weeks during the December 2021 to December 2023 period, defendants failed to pay Mr. Romano for any of his hours. *Id*. ¶ 18.

## DISCUSSION

### I. LEGAL PRINCIPLES

"Although the allegations of a complaint pertaining to liability are deemed admitted upon entry of a default judgment, allegations relating to damages are not." *Rodriguez v. Lucky Lotto Grocery Deli Corp.*, No. 22-CV-2256, 2024 WL 3760583, at *13 (E.D.N.Y. July 18, 2024), (citing *Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992)), *report and recommendation adopted*, 2024 WL 3759660 (E.D.N.Y. Aug. 12, 2024). The plaintiff must provide evidence that supports the amount of his claimed damages with "reasonable certainty." *Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999).

A FLSA and NYLL plaintiff may meet his burden of proving "how many hours he . . . worked and how much he . . . was paid" by submitting sworn statements "as to hours worked and rates of pay based on estimation and recollection, even if the information provided is general and not detailed." *Rodriguez*, 2024 WL 3760583, at *13 (citation and internal quotation marks omitted). "Nevertheless, the Court must ensure that plaintiff's approximations and estimates are reasonable and appropriate." *Id*. (collecting cases).

## II.    DAMAGES

Under the FLSA and NYLL, an employer must provide an employee with an overtime premium, set at one-and-a-half the employee's regular hourly rate of pay, for each hour worked in excess of 40 hours per week. *See* 29 U.S.C. § 207(a)(1); N.Y. Lab. Law §§ 650 *et seq*. However, a plaintiff is only entitled to one recovery for overtime violations alleged under the FLSA and NYLL. *See Ni v. Bat-Yam Food Servs. Inc.*, No. 13-CV-7274, 2016 WL 369681, at *1 (S.D.N.Y. Jan. 27, 2016). Because Mr. Romano seeks liquidated damages under the NYLL and not under the FLSA, I analyze his damages under the former.

"In order to calculate overtime wages owed, the court must first determine the 'regular [hourly] rate' received by plaintiffs." *Herrera v. Tri-State Kitchen & Bath, Inc.*, No. 14-CV-1695, 2015 WL 1529653, at *9 (E.D.N.Y. Mar. 31, 2015). Based on Mr. Romano's statements that he worked as a "baker and food preparer" and that defendants operated a "delicatessen," Romano Decl. ¶¶ 4, 6, Mr. Romano's NYLL claim falls within the regulatory provisions governing the "hospitality industry." *See* N.Y.C.R.R. § 146-3.1(b) (defining covered employers to include "any eating or drinking place that prepares and offers food or beverage for human consumption").

Under those provisions, a hospitality employer must pay its employees "hourly rates of pay" and cannot do so "on a daily, weekly, . . . or other non-hourly rate basis." *Id*. § 146-2.5. Where "an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings . . . by the lesser of 40 hours or the actual number of hours worked by that employee during the work week." *Id*. § 146-3.5(b). In other words, the NYLL calculates the effective hourly rate of an employee compensated on a "weekly salary basis" as if that employee was paid for his first forty

3

hours of work only and did not receive any pay (let alone overtime premiums) for work in excess of those hours.

### 1. Report and Recommendation

Mr. Romano asserts that from June to December 2021, he was paid "a set weekly salary of $1,400" and worked 78 hours per week, and that from December 2021 to December 2023, he was paid "a set weekly salary of $1,800.00" and worked 91 hours per week. Romano Decl. ¶¶ 10–15. The Report and Recommendation accepted those assertions at face value and calculated Mr. Romano's hourly rate under § 146-2.5, finding that Mr. Romano's regular rate of pay was $35 per hour in the former period ($1400 divided by 40 hours) and $45 per hour in the latter period ($1800 divided by 40 hours). R. & R. at 17–18. Because Mr. Romano worked 38 hours of overtime for 26 weeks in the former period and 51 hours of overtime for 106 weeks in the latter period, the Report and Recommendation concluded that Mr. Romano was entitled to $416,775 in unpaid overtime compensation. *Id*. at 18–19.[1]

### 2. Unpaid Wages

However, § 146-3.5(b) does not determine Mr. Romano's "regular rate of pay," as that provision is clearly limited to cases in which an employer "fails to pay . . . an hourly rate of pay." *Id*.; *see also Guerra v. Trece Corp.*, No. 18-CV-625, 2020 WL 7028955, at *13 (S.D.N.Y. Nov. 30, 2020) (noting that § 146-3.5(b) is "best understood as [a] regulation[] providing guidance to courts that are tasked with calculating an hourly wage rate for employees who were not paid by the hour"). New York's statutes and regulations do not define what it means to be paid an

---

[1] The Report and Recommendation also recommended that I award Mr. Romano an additional $416,775 in liquidated damages under the NYLL, as well as pre and post-judgment interest. *Id*. at 22.

4

"hourly rate of pay." I therefore look to federal regulations for guidance,[2] which provide that an employee is paid on a "salary basis" where the employee "regularly receives each pay period . . . a predetermined amount . . . [that] is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.602(a); *see also* 29 C.F.R. § 778.114(a)(1) (describing a "fixed salary" as one "that does not vary with the number of hours worked in the workweek").

For the reasons set forth below, Mr. Romano's bare assertion that he was paid a "set weekly salary" fails to satisfy his burden of proving that he was not paid "an hourly rate of pay." *See Hosking v. New World Mortg., Inc.*, 570 F. App'x 28, 31 (2d Cir. 2014) (noting that an employee carries the burden of proving that he has in fact performed work for which he was improperly compensated" and must proffer "credible evidence to show the amount and extent of that work as a matter of just and reasonable inference" (internal quotation marks omitted)).

As described above, Mr. Romano attests that from June to December 2021 he worked a regular schedule of 78 hours and was paid $1,400 each week, and that from December 2021 to December 2023 he worked a regular schedule of 91 hours and was paid $1,800 each week. Romano Decl. ¶¶ 10–15. Notably, Mr. Romano's weekly paycheck increased by $400 (28.6%) in December of 2021, and if that paycheck covered only the first forty hours worked, Mr. Romano's effective hourly pay increased by $10 to $45 per hour (a 28.6% increase). However, Mr. Romano's evidence fails to provide any explanation for that dramatic raise in his earnings, such as a change in his working conditions, duties, or performance, *other than the thirteen-hour*

---

[2] The NYLL is "the state analogue to the federal FLSA" and "echoes the FLSA in compensation provisions regarding overtime . . . requirements." *D'Arpa v. Runway Towing Corp.*, No. 12-CV-1120, 2013 WL 3010810, at *18 (E.D.N.Y. June 18, 2013).

5

*increase in his weekly work hours* concurrent to his pay increase.[3] The only possible inference that I can draw is that the increase in Mr. Romano's earnings represented payment for those additional hours, and that he was therefore compensated based on his hours pegged to an hourly rate. *Cf. Hernandez v. Jrpac Inc.*, No. 14-CV-4176, 2016 WL 3248493, at *9, 32 (S.D.N.Y. June 9, 2016) (concluding that trial evidence established that plaintiffs were paid a "fixed weekly rate of pay" rather than being "keyed to a pre-set hourly rate," and that based on that finding the court would calculate plaintiffs' "regular hourly rate" under 12 N.Y.C.R.R. § 146-3.5.). That inference is further strengthened by the fact that Mr. Romano's estimate of his weekly "salary" ($1,800.00) is slightly more than what he would have been paid had he earned New York's $15.00 minimum wage *including overtime* ($1,747.50).[4] Accordingly, Mr. Romano's recollection that he was paid a "set weekly salary" that did not vary according to his hours, Romano Decl. ¶¶ 12, 14, is controverted by his own statements demonstrating that he was paid based on his hours and at an hourly rate. *See Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 489 (S.D.N.Y. 2017), (finding that employees who were paid on a "weekly or biweekly schedule" and generally "earned the same amount of money week over week" were paid on an hourly rather than weekly basis, as plaintiffs worked a "very fixed" schedule and plaintiffs' weekly pay "varied depending on how many hours they worked in a given week" (internal quotation marks omitted)), *aff'd*, 752 F. App'x 33 (2d Cir. 2018).

     Nor does Mr. Romano's recollection that he was paid a consistent amount on a weekly basis in each of the two periods establish that Mr. Romano was paid a non-hourly rate, as Mr.

---

[3] Mr. Romano's complaint similarly fails to allege any basis for his salary increase other than his increased hours.

[4] At $15.00 an hour, Mr. Romano would have been paid $600.00 for his first forty hours ($15 multiplied by 40) and $1,147.50 for his fifty-one overtime hours ($22.50 multiplied by 51).

6

Romano worked a fixed number of hours per week in those two periods and does not identify any week in which he worked a different schedule. *See Romero v. Rung Charoen Sub, Inc.*, No. 16-CV-1239, 2017 WL 4480758, at *8 (E.D.N.Y. Sept. 30, 2017) (noting that evidence failed to establish whether plaintiff's $100 per day earnings "was a fixed daily rate" or "based on a regular hourly rate and a fixed daily schedule," where plaintiff testified only that he was paid $100 per day and there was no evidence that the pay fluctuated based on the hours per day). On the present record, Mr. Romano's assertion that he received a fixed weekly payment for his fixed weekly schedule can be explained in either of two ways: either Mr. Romano was paid a fixed salary on a weekly basis, or he was paid a fixed hourly rate at a *weekly pay frequency*. Mr. Romano's evidence is thus insufficient, without more, to prove the former proposition.

      Finally, although a plaintiff may meet his burden of "'show[ing] the amount and extent of [the uncompensated] work as a matter of just and reasonable inference' . . . through estimates based on his own recollection," *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 362 (2d Cir. 2011) (quoting *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 686–87 (1946)), "the [c]ourt must ensure that plaintiffs' approximations and estimates are reasonable and appropriate," *see Rodriguez*, 2024 WL 3760583, at *13 (internal quotation marks omitted). Acceptance of Mr. Romano's bare assertion that he was paid a fixed weekly salary rather than an hourly rate, and calculating damages thereunder, would be unreasonable and inappropriate. Assuming that Mr. Romano was indeed paid a fixed weekly salary from December 2021–23, his effective hourly rate under § 146-3.5(b) of $45.00 was more than twice the average pay for New York employees in similar occupations. *See* U.S. Bureau of Labor Statistics, *May 2023 State Occupational Employment and Wage Estimates: New York*, OCCUPATIONAL EMPLOYMENT AND WAGE STATISTICS, https://www.bls.gov/oes/2023/may/oes_ny.htm (last visited Nov. 22, 2024)

7

(calculating the estimated mean wage in the state of New York for fast food and counter workers ($16.80), food preparation workers ($18.41), and bakers ($19.56)).[5] Notably, Mr. Romano offers no evidence that his employment was in any way distinct from similarly situated positions, much less a distinction that would support his assertion of a markedly higher rate of pay.[6] And given Mr. Romano's hours, an effective hourly rate of $45.00 would mean that the parties contracted for Mr. Romano to receive a yearly income of $272,610.00,[7] which would undoubtedly make him one of the highest-paid "baker[s] and food preparer[s]" in the country. Romano Decl. ¶ 6.

Given that Mr. Romano's evidence indicates that he was paid an hourly rate, and that calculation of his wages from a fixed salary yields unreasonable values, Mr. Romano's naked assertion that he was instead paid a fixed salary is insufficient to meet his evidentiary burden. Although an employee's burden of proving damages under the FLSA and NYLL is "minimal, . . . . the district court is not permitted to just accept plaintiff's statement of the damages." *Hosking*, 570 F. App'x at 32. Mr. Romano's "regularly hourly rate" therefore cannot be determined by reference to § 146-3.5(b), as application of that rule requires Mr. Romano to first establish that he was paid a weekly salary rather than an hourly rate with a weekly pay frequency. *See Urena v. 0325 Tuta Corp.*, No. 20-CV-3751, 2022 WL 4284879, at *5 (S.D.N.Y.

---

[5] I may take judicial notice of the Bureau of Labor's statistics. *See Mathews v. ADM Milling Co.*, No. 15-CV-969, 2019 WL 2428732, at *4 (W.D.N.Y. June 11, 2019); *Suzon J. v. Kijakazi*, No. 23-CV-868, 2024 WL 3738942, at *11 (D. Conn. June 12, 2024).

[6] I note that Mr. Romano's asserted effective hourly rate of $45.00 is not only twice the *average* hourly pay for workers in New York with similar occupation classifications, but is also twice the hourly pay of employees in the *90th percentile* for those occupations. *See* U.S. Bureau of Labor Statistics, *May 2023 State: state_M2023_DL*, OCCUPATIONAL EMPLOYMENT AND WAGE STATISTICS (OEWS) TABLES, https://www.bls.gov/oes/special-requests/oesm23st.zip (last visited Nov. 22, 2024) (calculating 90th percentile wage for fast food and counter workers ($18.53), food preparation workers ($22.66), and bakers ($24.61)).

[7] At $45.00 an hour, Mr. Romano would have been entitled to a weekly paycheck of $5,242.50 ($45*40 hours + $45*1.5*51 hours).

8

Sept. 16, 2022) (noting that § 146-3.5(b) applies "in instances where plaintiffs were paid weekly rather than hourly"), *R&R adopted*, 2022 WL 17249362 (S.D.N.Y. Nov. 28, 2022); *Campos Marin v. J&B 693 Corp.*, No. 19-CV-569, 2022 WL 377974, at *7 (S.D.N.Y. Jan. 21, 2022) (noting that § 146-3.5(b) applies where "an employer fails to pay an employee an hourly rate of pay" and instead pays a "fixed salary"), *R&R adopted* 2022 WL 374522 (S.D.N.Y. Feb. 7, 2022). For that reason, I decline to adopt the Report and Recommendation's calculation of damages under § 146-3.5(b).

Nonetheless, I accept Mr. Romano's assertion that he was not paid an added premium for his overtime hours, as that allegation "pertain[s] to liability" and is "deemed admitted upon entry of a default judgment." *Rodriguez*, 2024 WL 3760583, at *13 (citing *Greyhound Exhibitgroup*, 973 F.2d at 158). Moreover, Mr. Romano's attestations that he was not paid an overtime premium, unlike his statements regarding his rate of pay, are uncontroverted by his other evidence. I therefore conclude that Mr. Romano was paid a flat hourly rate for each of his hours worked, without payment of an overtime premium, and calculate damages accordingly.

Thus, during the June 2021 to December 2021 period, Mr. Romano's hourly rate of pay was $1,400 divided by 78 hours, or $17.95 per hour. During that 26-week period, Mr. Romano worked 38 hours of overtime each week, and was paid his base rate for those hours without the additional 50% overtime premium. Mr. Romano thus should have been paid an additional $8.97 for each of those hours. Accordingly, from June 2021 to December 2021, Mr. Romano was entitled to $8,862.36 in unpaid overtime premiums.

From December 2021 to December 2023, Mr. Romano's hourly rate of pay was $1,800 divided by 91 hours, or $19.78 per hour. During 86 weeks of that 106-week period, Mr. Romano worked 51 hours of overtime each week, and was paid for those hours at his base rate without the

9

additional 50% overtime premium. Mr. Romano thus should have been paid an additional $9.89 for each of those hours. Accordingly, Mr. Romano was entitled to $43,377.54 in unpaid overtime premiums for those weeks.

Finally, for 20 weeks between December 2021 to December 2023, Mr. Romano was completely unpaid for both his 40 non-overtime hours and his 51 overtime hours. At his base hourly pay rate of $19.78 and overtime rate of $29.67, Mr. Romano was entitled to $2,304.37 per week in unpaid wages and overtime, for a total of $46,087.40.[8]

Adding those figures together, Mr. Romano has established that he is owed $98,332.64 in unpaid wages and overtime premiums.

### 3. Liquidated Damages

Mr. Romano also seeks liquidated damages under the NYLL, which permits a plaintiff to obtain an additional award equaling one hundred percent of the unpaid wages due. N.Y. Lab. Law § 663(1). A NYLL plaintiff is entitled to liquidated damages "unless the employer proves a good faith basis to believe that its underpayment of wages" was lawful. *Id*.

"In light of the default by Defendants, there has been no showing that they acted in good faith or that the Court should exercise its discretion to deny liquidated damages." *Dominguez v. 4 Giron Constr. Inc.*, No. 22-CV-4730, 2024 WL 4250289, at *7 (E.D.N.Y. Aug. 15, 2024). As discussed above, plaintiff has established that he was owed $98,332.64 in unpaid wages and overtime premiums. I therefore award plaintiff an additional $98,332.64 in liquidated damages.

### 4. Interest

Plaintiff also seeks prejudgment interest under the NYLL, which "permits the award of

---

[8] "Unlike the FLSA, the NYLL does allow for recovery of unpaid wages at the agreed-upon rate, even if it exceeds the minimum wage." *Shetty v. SG Blocks, Inc.*, No. 20-CV-550, 2020 WL 3183779, at *5 (E.D.N.Y. June 15, 2020) (citation and internal quotation marks omitted).

10

both liquidated damages and pre-judgment interest." *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 48 (E.D.N.Y. 2015). However, prejudgment interest does not apply *to* the liquidated damages themselves. *See id.* at 49 (E.D.N.Y. 2015) ("Prejudgment interest is calculated on the unpaid wages due under the NYLL, not on the liquidated damages awarded under the state law." (internal quotation marks omitted and alterations adopted)).

New York's prejudgment interest rate is 9% per annum. N.Y.C.P.L.R. § 5004. When, as here, "unpaid wages were incurred at various times . . . [s]imple prejudgment interest is calculated from a singular, midpoint date . . . through the date judgment is entered." *Gortat v. Capala Bros.*, 949 F. Supp. 2d 374, 386 (E.D.N.Y. 2013) (citation and internal quotation marks omitted). A common date is "the midpoint between the first and last dates of the plaintiff's NYLL claims." *Rosas v. M & M LA Solucion Flat Fixed Inc.*, No. 23-CV-1212, 2024 WL 4131905, at *17 (E.D.N.Y. Sept. 10, 2024) (citation and internal quotation marks omitted).

The midpoint for Plaintiff's employment between June 1, 2021 and December 9, 2023 is September 4, 2022. Applying the nine percent per annum rate, plaintiff is awarded $19,993.50 in prejudgment interest.[9]

Finally, I award postjudgment interest under 28 U.S.C. § 1961(a) on all sums awarded, commencing from the entry of judgment. *See Westinghouse Credit Corp. v. D'Urso*, 371 F.3d 96, 100 (2d Cir. 2004) (holding that post judgment interest under 28 U.S.C. § 1961(a) is mandatory).

### III. CONCLUSION

For the reasons set forth above, I adopt the Report and Recommendation in part and

---

[9] That figure is calculated by multiplying Mr. Romano's unpaid wages ($98,332.64) by 9%, and then dividing by 365, for a daily rate of $24.25. The period from September 4, 2022 to December 4, 2022 is 822 days.

11

modify it in part. Accordingly, I grant plaintiff's motion for default judgment against defendants Bagel & Deli Creation New York LLC and Neil Patel. I award plaintiff damages totaling $216,598.78, consisting of $98,332.64 in unpaid wages and overtime premiums, $98,332.64 in liquidated damages, and $19,993.50 in prejudgment interest, in addition to postjudgment interest on that sum.

SO ORDERED.

/s/
Allyne R. Ross
United States District Judge

Dated:         December 4, 2024
               Brooklyn, New York